FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

2017 MAR -9 PM 2:56

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

CASE NO: 6:17-cv-434-Orl-41KRS

ATM METABOLICS, LLC,
a Florida limited liability company,

Plaintiff,

v.

PANACEA SCIENTIFIC, INC.
a Nevada corporation, and CHAD
A. LACHAPELLE, an individual,

Defendants.
_______________________________/

## COMPLAINT

Plaintiff, ATM METABOLICS, LLC, brings this action against Defendants, PANACEA SCIENTIFIC, INC. and CHAD A. LACHAPELLE, for temporary and permanent injunctive relief and damages, and in support thereof allege that:

## PARTIES

1. Plaintiff, ATM METABOLICS, LLC ("Plaintiff"), is a limited liability company organized and existing under the laws of the State of Florida, with a principal place of business at 6039 Cypress Gardens Blvd., #313, Winter Haven, Florida 33884.

2. Defendant, PANACEA SCIENTIFIC, INC. ("Panacea"), is a corporation organized and existing under the laws of the State of Nevada, with a principal place of business at 433 South Main Street, West Hartford, Connecticut 06110.

3. Defendant, CHAD A. LACHAPELLE, ("LaChapelle") is an individual believed to be residing in East Longmeadow, Massachusetts, is over the age of 18, and is otherwise *sui juris*.

**JURISDICTION**

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendants. In addition, the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00).

5. This Court also has subject matter jurisdiction over this action under 15 U.S.C. §1121, and under 28 U.S.C. §§ 1331 and 1338(a), because this case arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.*

6. This Court has subject matter jurisdiction over the common law claims herein under 28 U.S.C. § 1338(b) because those claims are joined with a substantial and related claim under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.*, over which this Court has original jurisdiction.

7. This Court has supplemental jurisdiction over all of the claims pled under state law herein under 28 U.S.C. § 1367 because those claims are joined with, and are so related to Plaintiffs' claims under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.*, over which this Court has original jurisdiction, such that they form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has *in personam* jurisdiction over Panacea in this action because it engaged in unlawful practices, including manufacturing, marketing, and selling certain products which infringe Plaintiff's trademark, and which products are directed to consumers in this judicial district.

9. This Court has *in personam* jurisdiction over LaChapelle in this action because he, upon information and belief, directed, controlled, ratified, participated in, and/or was the moving force behind Panacea's unlawful practices, including its manufacturing, marketing, and selling of

certain products which infringe Plaintiff's trademark, and which products are directed to consumers in this judicial district.

10. Venue is proper pursuant to 28 U.S.C. §1391 because LaChapelle and Defendant regularly engage in business in this judicial district, including, without limitation, marketing and selling products infringing Plaintiff's trademark in this judicial district, and throughout the entire United States. Furthermore, some of the complained of acts occurred in this judicial district, which caused harm to Plaintiff in this judicial district.

11. At all times material hereto, Panacea and LaChapelle acted by and through their principals, agents, employees, management, contractors and servants, have acted in concert with them and have intentionally engaged in the complained of acts directly, indirectly, vicariously, have induced, participated in or contributed to same and/or have done so with knowledge that others would use Panacea's products and services to engage in the complained of acts.

## **GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

12. Plaintiff is a leading research firm dedicated to the discovery of new and useful treatments for metabolic and neurological disorders.

13. To that end, Plaintiff developed a formula marketed under the Emulin® brand, a naturally derived compound that has the unique ability to "buffer" and "quelch" the effects of glucose on the human metabolic pathway, which is instrumental in treating hyperglycemia and improving the lives of diabetics worldwide.

14. In connection with this development, Plaintiff obtained two patents on this breakthrough discovery; *to wit*: U.S. Patent Nos. 7,943,164 and 8,198,319 (collectively the "Emulin® Patents").

15. On March 25, 2008, Plaintiff filed a federal trademark application for the mark

EMULIN on an “intent-to-use” basis. On February 23, 2011, Plaintiff filed its Statement of Use.

16. On April 5, 2011, Plaintiff was assigned Registration No. 3941075 for the mark EMULIN in International Class No. 5 for use in connection with “Dietary and nutritional supplements for weight loss; dietetic foodstuffs and nutritional additives for medical purposes for use in foods and dietary supplements for human and animal consumption; foods for medically restricted diets, dietary supplemental drinks” with a first use and first use in commerce date of December 10, 2010. The mark was assigned Registration No. 3941075.

17. Meanwhile, Plaintiff began to offer for sale and sold Emulin® in or around late 2010.

18. On February 28, 2017, after more than 5 years of continuous use, Plaintiff filed its Combined Declaration of Use and Incontestability under 15 U.S.C. §§ 1058 and 1065. Thus, Plaintiff is entitled to incontestable status to the Emulin® mark.

19. Defendant Panacea is engaged in the marketing and sale of various non-prescription vitamins, supplements, and other health-related products.

20. Defendant LaChapelle is the Chief Operating Officer of Panacea and, based upon information and belief, has directed, controlled, ratified, participated in, and/or was the moving force behind Panacea’s unlawful manufacturing, marketing, and selling of certain products which infringe Plaintiff’s trademark.

21. On November 25, 2015, Plaintiff and Panacea, through LaChapelle, entered into a license agreement granting Panacea the right to manufacture, market, offer for sale and sell products under the Emulin® mark and covered under the Emulin® Patents throughout the United States in exchange for royalty payments (hereinafter the “Emulin® License”). A true and correct copy of the Emulin® License is attached as **Exhibit A**.

22. Therein, Panacea, through LaChapelle, acknowledged Plaintiff's trademark and patent rights in the Emulin® mark and formula, particularly in the "Recitals" section, which provides,

> WHEREAS, ATM has developed and patented, and has exclusive rights to, a formula known as Emulin® for the reduction of Hyperglycemia/Diabetes as more fully described in U.S. Patent #7,943,164 & #8,198,319 and patent application US 20120252887A1.

23. The term of the Emulin® License commenced on October 1, 2015 and naturally expired by its own terms, without renewal or extension, on September 30, 2016.

24. Following the expiration of the Emulin® License, Plaintiff and Defendants engaged in conversations to possibly renew the Emulin® License.

25. Plaintiff, however, required Defendants to cease using the Emulin® as a prerequisite of discussing such a potential new agreement, but Defendants did not agree.

26. Therefore, the Parties did not reach any new agreement, and Plaintiff made it clear that Defendants were not authorized to continue manufacturing or selling any product marketed under the Emulin® mark, covered by the Emulin® Patents, or which would have been otherwise been subject to the Emulin® License.

27. Nevertheless, Panacea, believed to be directed or controlled by LaChapelle, has boldly continued to unlawfully market and sell products called "GC7x Blood Sugar Control" and "GC7x Surge! Blood Sugar Control," both of which are prominently marketed under the Emulin® brand, and advertised as containing a formula covered by at least one of the Emulin® Patents. Such illegal sales are at least being made *via* Panacea's websites at http://www.panaceascientific.com and https://gc7x.com/. Screenshots from Panacea's websites are attached hereto as **Exhibit B**, which are reproduced in pertinent part below:







28. The information on Panacea's website marketing these products also boldly advertises, in part, that the marketed product "**[c]ontains Emulin™ a patented**, clinically tested blend of bioflavonoids that has shown clinical efficacy to reduce blood sugar through 7 different pathways." *Id.* (emphasis added).

29. Defendants have no legal right to manufacture, market, offer for sale, or sell any product called or containing Emulin®, yet they continue to do so.

30. All conditions precedent have been met, waived, or satisfied to bring this lawsuit.

31. As a direct and proximate result of the Defendants' acts complained of herein, Plaintiff has been forced to retain the undersigned law firm, and has agreed to pay said firm a reasonable fee for their services, and to pay all costs associated with the prosecution of this matter.

32. Pursuant to Paragraph 13 of the Emulin® License, Plaintiff is entitled to recover from Defendants, at a minimum, "reimbursement for its expenses, including court costs and reasonable attorneys' fees" for having to investigate, prepare and prosecute this action.

**COUNT I**
**<u>TEMPORARY AND PERMANENT INJUNCTIVE RELIEF</u>**
(Against Panacea)

33. Plaintiff realleges and reavers paragraphs one (1) through thirty-two (32) as if fully set forth herein.

34. This is an action for temporary and permanent injunctive relief pursuant to common law principles, and pursuant to Title 15, United States Code, Section 1117, of the United States Trademark Act.

35. As alluded to in more detail above, Panacea has continued to market and sell products under the Emulin® brand and covered by the Emulin® Patents long after the Emulin® License naturally expired.

36. Panacea continues to brazenly engage in this unlawful conduct, despite having been warned that it may not market and sell products under the Emulin® brand and covered by the Emulin® Patents.

37. Such refusal to honor Plaintiff's clear intellectual property rights in and to the Emulin® mark and Emulin® Patents has caused, and will continue to cause, irreparable harm. Each day that Plaintiff is deprived of these intellectual property rights causes irreparable injury.

38. Plaintiff has no adequate remedy at law, especially because the property at issue is intellectual property from which Plaintiff is being deprived.

39. There is no remedy at law that can fully compensate Plaintiff for the deprivation of said intellectual property rights, and, in light of the facts of this case, there is a substantial likelihood that Plaintiff will succeed on the merits of the instant case.

**COUNT II**
**<u>TEMPORARY AND PERMANENT INJUNCTIVE RELIEF</u>**
(Against LaChapelle)

40. Plaintiff realleges and reavers paragraphs one (1) through thirty-two (32) as if fully set forth herein.

41. This is an action for temporary and permanent injunctive relief pursuant to common law principles, and pursuant to Title 15, United States Code, Section 1117, of the United States Trademark Act.

42. Upon information and belief, LaChapelle directed, controlled, ratified, participated in, and/or was the moving force behind Panacea's unlawful practices, including its manufacturing, marketing, and selling of certain products which infringe Plaintiff's trademark.

43. As alluded to in more detail above, based upon information and belief, LaChapelle has engaged in such unlawful practices by, at a minimum, continuing to direct, control, ratify, participate in, and/or serve as the moving force behind Panacea's unlawful practices, including its manufacturing, marketing, and selling of certain products under the Emulin® brand and covered by the Emulin® Patents long after the Emulin® License expired.

44. LaChapelle continues to brazenly engage in this unlawful conduct, despite having been warned that he may not market and sell products under the Emulin® brand and covered by the Emulin® Patents.

45. Such refusal to honor Plaintiff's clear intellectual property rights in and to the Emulin® mark and Emulin® Patents has caused, and will continue to cause, irreparable harm. Each day that Plaintiff is deprived of these intellectual property rights causes irreparable injury.

46. Plaintiff has no adequate remedy at law, especially because the property at issue is intellectual property from which Plaintiff is being deprived.

47. There is no remedy at law that can fully compensate Plaintiff for the deprivation of said intellectual property rights, and, in light of the facts of this case, there is a substantial

likelihood that Plaintiff will succeed on the merits of the instant case.

**COUNT III**
**FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1114)**
(Against Panacea)

48. Plaintiff realleges and reavers paragraphs one (1) through thirty-two (32) as if fully set forth herein.

49. Plaintiff is the legal and rightful owner of the federally registered incontestable trademark, Emulin®, Registration No. 3941075, in connection with "Dietary and nutritional supplements for weight loss; dietetic foodstuffs and nutritional additives for medical purposes for use in foods and dietary supplements for human and animal consumption; foods for medically restricted diets, dietary supplemental drinks." This registration enjoys a priority-of-use date of at least December 10, 2010.

50. This registration also enjoys a statutory presumption of validity, ownership of the mark, and Plaintiff's exclusive right to use and license the Emulin® mark in connection with the aforementioned goods.

51. The Emulin® mark and formula has acquired significant recognition and goodwill in the minds of consumers, and is considered incontestable under 15 U.S.C. §§ 1058 and 1065.

52. Without authorization, Panacea has used and continues to use the Emulin® mark in connection with the sale of its "GC7x Blood Sugar Control" and "GC7x Surge! Blood Sugar Control" products.

53. These acts are in direct and willful violation of §43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1114, in that Panacea has used in connection with its products a false designation of origin, a false or misleading description and representation of fact which is

likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Panacea with Plaintiff and as to the origin, sponsorship, and approval of Panacea's products and commercial activities by Plaintiff.

54. The likely confusion, mistake, or deception caused by Panacea is in violation of the Lanham Act, 15 U.S.C. § 1114.

55. The acts of Panacea are being performed in willful, deliberate, and/or intentional disregard of Plaintiff's rights in the incontestable Emulin® mark.

56. As a direct result of Panacea's actions and the likely confusion, mistake or deception, Plaintiff has suffered damages in an amount not yet determined.

57. Panacea's conduct in this instance is exceptional, and, as such, Plaintiff should be entitled to recover its attorneys' fees in this action pursuant to 15 U.S.C. § 1117(a) which provides, *in part*, that the "court in exceptional cases may award reasonable attorney fees to the prevailing party."

**COUNT IV**
**FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1114)**
(Against LaChapelle)

58. Plaintiff realleges and reavers paragraphs one (1) through thirty-two (32) as if fully set forth herein.

59. Plaintiff is the legal and rightful owner of the federally registered incontestable trademark, Emulin®, Registration No. 3941075, in connection with "Dietary and nutritional supplements for weight loss; dietetic foodstuffs and nutritional additives for medical purposes for use in foods and dietary supplements for human and animal consumption; foods for medically restricted diets, dietary supplemental drinks." This registration enjoys a priority-of-use date of at

least December 10, 2010.

60. This registration also enjoys a statutory presumption of validity, ownership of the mark, and Plaintiff's exclusive right to use and license the Emulin® mark in connection with the aforementioned goods.

61. The Emulin® mark and formula has acquired significant recognition and goodwill in the minds of consumers, and is considered incontestable under 15 U.S.C. §§ 1058 and 1065.

62. Without authorization, Panacea has used and continues to use the Emulin® mark in connection with the sale of its "GC7x Blood Sugar Control" and "GC7x Surge! Blood Sugar Control" products.

63. Upon information and belief, LaChapelle directed, controlled, ratified, participated in, and/or was the moving force behind Panacea's unlawful use of the Emulin® mark in connection with the sale of its "GC7x Blood Sugar Control" and "GC7x Surge! Blood Sugar Control" products.

64. These acts are in direct and willful violation of §43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1114, in that LaChapelle has directed, controlled, ratified, participated in, and/or was the moving force behind Panacea's decision to use in connection with its products a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Panacea with Plaintiff and as to the origin, sponsorship, and approval of Panacea's products and commercial activities by Plaintiff.

65. The likely confusion, mistake, or deception caused by LaChapelle is in violation of the Lanham Act, 15 U.S.C. § 1114.

66. The acts of LaChapelle are being performed in willful, deliberate, and/or intentional

disregard of Plaintiff's rights in the incontestable Emulin® mark.

67. As a direct result of LaChapelle's actions and the likely confusion, mistake or deception, Plaintiff has suffered damages in an amount not yet determined.

68. LaChapelle's conduct in this instance is exceptional, and, as such, Plaintiff should be entitled to recover its attorneys' fees in this action pursuant to 15 U.S.C. § 1117(a) which provides, *in part*, that the "court in exceptional cases may award reasonable attorney fees to the prevailing party."

## COUNT V
## BREACH OF EMULIN® LICENSE AGREEMENT

69. Plaintiff realleges and reavers paragraphs one (1) through thirty-two (32) as if fully set forth herein.

70. The Emulin® License Agreement between Plaintiff and Panacea constitutes a valid contract.

71. The Emulin® License Agreement permitted Panacea to manufacture, market, and sell Emulin® from October 1, 2015 through September 30, 2016. Ex. A at ¶ 11.

72. As more fully set forth above, Panacea has materially breached this provision of the Emulin® License Agreement by continuing to manufacture, market, and sell products under the Emulin® mark and advertised as containing product covered by at least one of the Emulin® Patents.

73. Panacea's actions are malicious and willful, and have been made with the specific intent to injure Plaintiff.

74. Plaintiff has suffered damage as a result of Panacea's willful material breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for an Order as follows:

a) temporarily and permanently enjoining Defendants and all of those acting in concert with them, including, but not limited to, their agents, affiliates, subsidiaries, officers, directors, attorneys and employees from using the Emulin® mark or any similar trademark, trade name, logo, corporate name, service mark, and requiring Defendants to immediately remove any and all products advertising with the Emulin® mark from the websites http://panaceascientific.com and https://gc7x.com/, and any other sites on which the Emulin® mark appears;

b) requiring Defendants to destroy all labels, stickers, signs, prints, packages, products, wrappers, receptacles, advertisements, signage, and any written or printed materials, including product labels, in their possession, custody, or control which bear the mark Emulin® alone or in combination with any other words, marks, or other elements;

c) an order requiring Defendants to file with the Court, and serve upon Plaintiff's counsel, within thirty (30) days after entry of judgment, a report, in writing, and under oath, setting forth, in detail, the manner and form in which Defendants have complied with the requirements of the injunction and order;

d) compensating Plaintiff for the full amount of damages sustained, including, but not limited to, any and all damage remedies available which include, but are not limited to, lost profits, a reasonable royalty award, statutory damages, and disgorgement of the profits received by Defendants;

e) declaring this case exceptional and trebling all damages awarded to Plaintiff;

f) imposition of all pre and post judgment interest at the maximum allowable rate on the full compensatory and trebled amount awarded to Plaintiff;

g) awarding remuneration of all attorneys' fees, costs and expenses for Plaintiff having to investigate, prepare and prosecute this action, pursuant to at least the Emulin® License Agreement and 15 U.S.C. § 1117(a); and

h) for such further and additional relief this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**DATED: March 8, 2017.**

**THE CONCEPT LAW GROUP, P.A.**
*Attorneys for Plaintiff*
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309

Telephone: 754-300-1500
Facsimile: 754-300-1501

By: *<u>/s/ Alexander D. Brown</u>*
Alexander D. Brown (FBN: 752665)
E-mail: Abrown@conceptlaw.com
Adam S. Goldman (FBN: 86761)
E-mail: Agoldman@conceptlaw.com
Scott D. Smiley (FBN: 678341)
E-mail: Scott@conceptlaw.com